———o———

SOPHIE MARTIN, *et al.*, Defendants in Error, *vs.* FREDERICK C. BONSACK, *et al.*, Plaintiffs in Error.

1. *Land titles—Explanations of possessor—For what purpose admissible.*—The tendency of recent adjudications is to admit explanations of a possessor of property as to his title, not with a view to set up such title, but to show whether his possession was adverse under the statute of limitations or otherwise.

2. *Sheriff's deed—Recitals—Term of court.*—A sheriff's deed which does not recite that the land was sold at any term of court, is void.

3. *Limitation—Prior possession short of statutory bar, will prevail, when.*—A prior possession, though short of the statutory bar, will prevail against a subsequent possession, which has not ripened into title, provided the former was under claim of right, and has not been abandoned.

*Error to St. Louis Circuit Court.*

*B. A. Hill*, for Plaintiffs in Error.

*E. P. Johnson*, for Defendants in Error, cited Crockett vs. Morrison, 11 Mo. 3 ; Dale vs. Faivre, 43 Mo., 556 ; Fugate vs. Pierce, 49 Mo., 441 ; Bledsoe vs. Simmons, 53 Mo., 305 ; McDonald vs. Schneider, 27 Mo., 405.

NAPTON, Judge, delivered the opinion of the court.

This was an action of ejectment brought by the heirs at law of Pelagie Lee, to recover possession of a lot in the northern part of block one, in the city of St. Louis. The suit was brought in August, 1871.

The plaintiffs relied on a title acquired by adverse possession of ten years, prior to the possession of the defendants.

The original title was in one Thomas Rogers and his legal representatives.

The defendants claimed under deeds from Thomas Rogers and from Wm. Russell, who claimed to be the representative of Rogers, to Elliott Lee, and from Elliott Lee by the sheriff, to them.

The plaintiffs relied on the title of Pelagie Lee by adverse possession of ten years.

The parol evidence in the case tended to establish that the property was bought originally by Pelagie Lee, when a widow, and before her marriage with Elliott Lee ; that subsequently to this marriage, which occurred in 1825. Elliott Lee, the husband, in 1829, procured a deed from Russell, who was supposed to be the owner, to himself. In 1840, Elliott Lee executed a deed for this property to his mother, which was duly acknowledged and recorded, and this deed was not signed by his wife, nor does any importance seem to be attached to it by either party in the present controversy.

In 1842, Peter Lindell obtained a judgment against Elliott Lee, and an execution and a sheriff's sale and deed, but as this deed did not state that the land was sold at any term of the court, it was conceded to be void under the decision of this court in Tanner vs. Stone (18 Mo., 580). It was offered merely to show possession of Lee under color of title.

In February, 1851, Elliott Lee died, and Mrs. Lee continued to live on the premises for upwards of ten years after her husband's death, and until her death, which occurred on 30th September. 1861.

In October, very soon after the death of Mrs. Lee, the agent of Peter Lindell, and his attorney, visited the premises, at that time in the occupation of Mrs. Lee's sister and her neice, both married women, with a view to obtain possession by the Lindells under the title they thought they had acquired from Elliott Lee. They succeeded in getting the husbands to sign a lease, thereby acknowledging themselves tenants ; but un-

der the circumstances stated by the attorney for Mr. Lindell in his examination, such possession could hardly be regarded as entitled to any consideration. Mrs. Martin, the sister of Mrs. Lee, did not sign the lease, nor assent to it. Her husband was, according to the testimony of Mr. Hill, a mere wreck, with no capacity to transact any business whatever. A little money to enable him to buy whisky would have induced him to sign any paper offered to him.

The principal point then, to which the evidence on both sides was directed, was to explain the character of the possession of Mrs. Pelagie Lee. On the side of her heirs, the plaintiffs, there was evidence to show that the lots were bought with her money; that after her marriage with Lee she was still recognized by her husband as the owner, and rented out such portions of the premises as were not needed by the family, and received the rents, and that Lee, the husband, referred such as applied to him for leases, to his wife; and that after his death she claimed absolute ownership, and that this claim continued for more than ten years, and this ripened into a title.

On the other hand, the defendants rely on the deed to Elliott Lee from Russell, and on the will of Elliott Lee who devised the premises to his wife for life, remainder to his nephews; and as Mrs. Lee did not renounce the will until after a year had elapsed, they claim that she took under it a life estate, and even conceding that she had a right to renounce, that her claim was only for dower, and in either view her possession was not adverse to those in remainder, or whose right only commenced upon the determination of her interests either as tenant for life, or until dower was assigned.

We have all the evidence offered on the record, although a large portion of it was excluded by the circuit court.

All the evidence of declarations by Mrs. Lee, after the death of her husband, in regard to her title to the lots, was excluded. As the plaintiffs had a verdict, the exclusion of this testimony is of course not assigned for error.

The tendency of recent adjudications is to admit explanations of a possessor of property as to his title, not with a view to set up such title, but to show whether his possession was adverse under the statute of limitations, or otherwise. All the evidence in the case tended to show that Mrs. Lee's possession was hostile to all the world, and not as dowress or tenant for life. This question was left to the jury by the instructions, and they found for plaintiffs.

The case in regard to the declarations of Mrs. Lee is rather a peculiar one. It was important to ascertain in what light Mrs. Lee herself regarded her possession. That she rejected, or attempted to reject, the provision for her benefit in the will of her husband was clear, but in so doing she claimed dower in Elliott Lee's estate. This claim is, however, explained by her instituting a suit to recover her interest as dowress in a tract of land in the northern part of the city, to which Lee supposed himself to have some claim. The result of this suit appears from a report of the case in 22 Mo., 202.

The plaintiffs having produced deeds to show title in Easton and Sullivan,* or to show an outstanding title, the defendants offered in evidence deeds to show Russell's title from Easton, but they were excluded.

We see no reason why they were excluded, but if admitted, the result would not be affected. There was no title in Lindell under the sheriff's sale, and to show title, or partial title in Elliot Lee would have no bearing on the case.

Under the decision of this court, in Crockett vs. Morrison, (11 Mo., 3), the plaintiffs were then entitled to recover, and the judgment is affirmed.

The other judges concur, except Judge Vories, who is absent.

---

* It seems that plaintiffs offered in evidence among other matters the proceedings before Frederick Bates, United States Recorder of Land Titles, by which this land was confirmed to Thomas Rogers, and a deed from Thomas Rogers to Adam Brown, and from Adam Brown to Rufus Easton and William Sullivan, for the purpose of showing that Elliot Lee did not acquire the legal title by the deed to him from William Russell.