## WARD v. COCHRAN.[1]

### (Circuit Court of Appeals, Eighth Circuit. December 2, 1895.)

### No. 632.

1. ADVERSE POSSESSION—PAROL CONTRACT OF SALE.
   A vendee of land in possession under a parol contract of sale holds adversely to his vendor from the time that the contract is executed by the payment of the purchase money.

2. CONTRACT OF SALE—ESTOPPEL OF VENDOR.
   If the vendee has not been in possession so long as to render the statute of limitations available, he may likely plead the contract of sale and the payment of the purchase money by way of estoppel in bar of an action in ejectment by the vendor.

3. ADVERSE POSSESSION.
   The possession of one taking land in payment for a debt is adverse as against all the world.

[1] Rehearing denied January 20, 1896.

**4. INSTRUCTIONS—SPECIAL VERDICT.**

When the jury are required by the court to return a special verdict, it is unnecessary and improper to give instructions upon general principles of law applicable to the case.

**5. SAME—HARMLESS ERROR.**

When the verdict returned is a special one, error in instructions given relative to general rules of law is not ground for reversal if the judgment actually rendered is clearly warranted by the verdict.

**6. EVIDENCE—DECLARATIONS AS TO TITLE.**

Declarations made by one in possession of land as to the nature of his claim to the land are admissible to show the character of his possession, whether they are in disparagement of his title or otherwise.

**7. INADMISSIBLE EVIDENCE—FAILURE TO OBJECT.**

There can be no review of the admissibility of evidence given in response to questions propounded by appellant's counsel, to exclude which no motion was made.

**8. EVIDENCE—DECLARATIONS AGAINST INTEREST.**

Where plaintiff claims under the foreclosure of a mortgage given by a former owner, and defendant claims title by adverse possession, declarations by such former owner, since deceased, made before the making of the mortgage, that he owed defendant some money, and that, not being able to pay it, he had given him some land in a certain section of a city, in which section the land in dispute lies, are admissible, as being against the interest of the party who made them, to show that defendant took possession of the property as owner under a parol contract of sale.

In Error to the Circuit Court of the United States for the District of Nebraska.

Seth E. Ward, the plaintiff in error, brought an action of ejectment against Elmer G. Cochran, the defendant in error, to recover the possession of 20 acres of land now situated in the city of Omaha, state of Nebraska, which was described in the complaint as being the W. ½ of the N. E. ¼ of the S. W. ¼ of section 4, township 15, range 13 E. Both parties to the suit claimed title to the property in controversy from a common source, to wit, under E. B. Taylor, in whom the title to the property appears to have been well vested prior to the year 1865. The plaintiff purchased the property in June, 1876, at a judicial sale under a decree foreclosing a mortgage upon the property which was executed by E. B. Taylor on July 28, 1871. The defendant deraigned title from the common source in the following manner; that is to say: He claimed that John Flannagan, his immediate grantor, went into possession of the property in controversy some time during the year 1865 under and in pursuance of a verbal contract with said E. B. Taylor, whereby Flannagan agreed to take the property in payment of a certain debt which Taylor then owed Flannagan; that Flannagan thereafter occupied the premises continuously under an open and notorious claim of ownership for about 20 years, and until some time in the year 1885, when he sold and conveyed the property and transferred his possession to Elmer G. Cochran, the present defendant. There was no controversy at the trial with respect to the merits of the plaintiff's title. On the contrary, it was conceded that the plaintiff held the paper title, and that he was entitled to recover the possession of the premises, unless it appeared that John Flannagan had entered into possession of the same under a parol contract of sale, prior to the date of the mortgage under which the plaintiff deraigned title, and had thereafter held possession of the property in such manner and form, and for such length of time, as was necessary, under the statute of limitations of the state of Nebraska, to create a legal title by adverse possession. In the state of Nebraska an action for the recovery of the possession of lands, tenements, or hereditaments can only be brought within 10 years after the cause of action shall have accrued. Consol. St. Neb. 1891, § 4542.

The jury returned a special verdict in the following form: "We, the jury, duly impaneled and sworn to try the issues joined in the above-entitled cause, do find and say, that one John Flannagan, in the year 1865, entered into the

possession of the west one-half of the northeast quarter of the southwest quarter of section 4, in township 15 north, of range 13 east of the sixth principal meridian, in Douglas county, Nebraska, being the land in controversy in this case, under a claim of ownership thereto; and that he remained under such claim of ownership in the open, actual, continuous, notorious, hostile, exclusive, and adverse possession thereof for the period of twenty years thereafter, and until he sold and transferred the same to the defendant in this case. We further find that John Flannagan and Julia Flannagan, his wife, by good and lawful deed of conveyance, conveyed said premises to the defendant in this suit in 1885, and thereupon surrendered his said possession to said defendant; and that said defendant has remained in the open, actual, continuous, notorious, hostile, exclusive, and adverse possession of said land described, under claim of ownership, down to the present time. We further find that at the commencement of this suit the said defendant was the owner of and entitled to the possession of said above-described land, and upon the issues joined in this cause we find for the said defendant." On the rendition of the said verdict the circuit court rendered a judgment in favor of the defendant, Cochran. To reverse that judgment the plaintiff below brought the case to this court by a writ of error.

John L. Webster and Hugh C. Ward, for plaintiff in error.

John M. Thurston and W. J. Connell, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is contended, in the first place, that, in view of all the evidence, the trial court should have directed the jury to return a verdict in favor of the plaintiff, and that it erred in refusing to give an instruction to that effect, which it was requested to give. While advocating this view, counsel for the plaintiff admit that the evidence showed that John Flannagan entered into possession of the premises in controversy some time in the year 1865, and that he held possession thereof continuously until some time in the year 1870. They insist, however, that Flannagan's possession was interrupted at the latter date, and that he did not resume or regain possession of the property until the year 1874, and that in the meantime the property was vacant and unoccupied, and that it was so vacant and unoccupied when the mortgage of July 28, 1871, was executed, under which the plaintiff claims title. It is further insisted that during the year 1878 Flannagan occupied the property under a lease which was granted by the plaintiff, and that from the year 1879 until some time in the year 1885 he also occupied the premises as a subtenant of one Jacob Elton, who had rented the land during those years from the plaintiff. In other words, the plaintiff contends that he succeeded in defeating the defendant's alleged title by conclusive evidence that the defendant's possession was broken from 1870 to 1874, and again from 1878 to 1885, and that, in view of such proof, the trial court should have directed a verdict for the plaintiff. After a careful examination of the testimony preserved in the bill of exceptions, we have not been able to assent to that view of the case. Although the plaintiff offered considerable evidence which tended to show that Flannagan's possession was interrupted for some time between the years 1870 and 1874, and while it is true that some testimony was offered which tended strongly to show that Flannagan

v.71f.no.1—9

attorned to the owner of the paper title about the year 1878, and that his possession of the property after the year 1878 was not exclusive, yet it cannot be said, we think, that the plaintiff succeeded in disproving the claim of adverse possession by such a conclusive array of facts and circumstances as would have warranted the court in withdrawing that issue from the jury. It would subserve no useful purpose to review all the testimony bearing upon the question whether Flannagan's possession of the property was interrupted for a time between the years 1870 and 1874, as claimed by the plaintiff, or whether he voluntarily attorned to the plaintiff at any time thereafter prior to the year 1885. These were disputed and hotly-contested issues of fact. Flannagan himself stoutly maintained that he settled upon the property in dispute about the year 1865, that he built a cabin thereon, tilled the soil from year to year thereafter, and that he made the place his home until he sold the premises to the defendant in the year 1885. He denied that he had ever abandoned the possession of the property, or attorned to the plaintiff or to his agents; but insisted, to the contrary, that he had at all times defended his possession to the best of his ability against all intruders. It is important to observe, in this connection, that Flannagan was an illiterate colored man, who had been a slave, and who had emigrated to the North, and had settled in the city of Omaha, during the early years of the war. He was, doubtless, ignorant of the manner in which the title to real estate is ordinarily conveyed, and most likely believed that he could rest secure on Taylor's verbal promise to give him the property, especially after he had taken possession of it, and had built a cabin on the land. His conduct, therefore, in taking possession of the property, and in holding it for years without a deed, and without demanding any written evidence of his title, cannot be judged by the ordinary standard; and such conduct on his part does not warrant the same inference against the validity of the claim which he now makes that might reasonably be drawn if he was a more intelligent man, and was better versed in business affairs. Moreover, other witnesses were called by the defendant, who gave testimony which corroborated Flannagan's statements, and which also tended to show that his possession was not broken between the years 1870 and 1874, but that he in fact made his home on the property, and cultivated the soil, during all of that period; and that his occupation of the property was practically continuous from the date of his first entry until some time in the year 1885, when he sold the premises to the defendant. Under these circumstances, our conclusion is that the issue as to the extent, duration, and character of Flannagan's possession was properly left to the jury. It is conceded that he occupied the land from 1865 to 1870. It is equally indisputable that he was the sole occupant of the property from 1874 to 1878; and there was some evidence, sufficient, we think, for the consideration of the jury, that he neither abandoned the property between the years 1870 and 1874, nor attorned to the plaintiff in the year 1878 or at any time thereafter.

It is insisted by the plaintiff that the peremptory instruction to return a verdict for the plaintiff should have been given for an-

other reason, namely, because Flannagan's possession of the premises was at no time an adverse possession, either as against E. B. Taylor, his vendor, or as against the plaintiff, who was a grantee of Taylor. It is claimed, in substance, that, inasmuch as Flannagan was the vendee of Taylor under a parol contract of sale, and entered into possession of the property in that character, his subsequent possession of the property was not an adverse possession, and could not become such without an open disclaimer and disavowal of the Taylor title. The doctrine invoked by the plaintiff in this behalf is one that seems to prevail in Virginia and West Virginia, and perhaps in a few other jurisdictions. It is there held that the relation existing between a vendor and vendee of land, when the latter enters into possession under a verbal contract of sale, is the same, in substance, as that which exists between landlord and tenant, mortgagor and mortgagee, trustee and cestui que trust, and that no period of possession by a vendee, held under a merely verbal contract of sale, without deed or other written conveyance, will serve to bar an action of ejectment by the vendor, even though the vendee may have paid the purchase money in full, because the vendee's possession is not adverse to the vendor. Williams v. Snidow, 4 Leigh, 14; Clarke v. McClure, 10 Grat. 305; Nowlin v. Reynolds, 25 Grat. 137; Chapman v. Chapman (Va.) 21 S. E. 813; Core v. Faupel, 24 W. Va. 238. See, also, Greeno v. Munson, 9 Vt. 37. A more reasonable doctrine, however, prevails elsewhere. By the great weight of authority it is now well settled that a vendee of land in possession under a parol contract of sale holds adversely to his vendor, at least from the moment that the contract of sale is executed on his part by the payment of the purchase money. After the payment of the purchase money the vendee may certainly invoke the statute of limitations as a defense to a suit in ejectment brought by his vendor, provided he has been in possession for the statutory period. And even if he has not been in possession for such length of time as will render the statute available, he can very likely plead the contract of sale and the payment of the purchase money by way of estoppel, as a bar to an action of ejectment brought by the vendor. Brown v. King, 5 Metc. (Mass.) 173; La Frombois v. Jackson, 8 Cow. 589; Bryan v. Atwater, 5 Day, 181; Ridgeway v. Holliday, 59 Mo. 444; Bank v. Fife, 95 Mo. 118, 126, 8 S. W. 241; Trotter v. Neal, 50 Ark. 340, 7 S. W. 384; Tayloe v. Dugger, 66 Ala. 447; Potts v. Coleman, 67 Ala. 221; Niles v. Davis, 60 Miss. 750; Montgomery Co. v. Severson, 64 Iowa, 326, 330, 17 N. W. 197, 20 N. W. 458; Wilson v. Campbell, 119 Ind. 286, 21 N. E. 893; Wood, Lim. Act. § 260. The same doctrine, in substance, is maintained and enforced by the federal tribunals. Blight's Lessee v. Rochester, 7 Wheat. 535, 548, 549; Society for Propagation of Gospel v. Town of Pawlet, 4 Pet. 479, 506, 507; Dickerson v. Colgrove, 100 U. S. 578; Kirk v. Hamilton, 102 U. S. 68; De Guire v. Lead Co., 38 Fed. 65; Neale v. Neale, 9 Wall. 1. In the case at bar, the evidence for the defendant tended to show that Flannagan entered into possession of the property in dispute under a verbal contract of sale that was executed on his

part by the payment of the purchase money. The contention, therefore, that his possession was not an adverse possession as against E. B. Taylor, his vendor, is not well founded. On the contrary, if he took the land in payment for a debt which Taylor then owed him, his possession at the outset was adverse to all the world; and, if that possession continued without interruption for the statutory period of 10 years, under the laws of the state of Nebraska, as construed by its highest court, it operated to transform the vendee's equitable title into a legal title. Gatling v. Lane, 17 Neb. 80, 22 N. W. 453; Haywood v. Thomas, 17 Neb. 237, 240, 241, 22 N. W. 460.

It is further contended that the trial court committed a material error in modifying certain instructions that were asked by the plaintiff, which should have been given without modification. The trial court gave the following instruction at the plaintiff's instance, to wit:

"The court instructs the jury that the burden of proof in this case is on the defendant to satisfy you by clear and positive evidence that John Flannagan entered upon the land in controversy, under a claim of ownership thereto, at least ten years prior to the commencement of this suit, which was December 4, 1886; and that Flannagan, or Flannagan and defendant, remained continuously in the actual, open, and notorious, hostile and exclusive, possession thereof for a period of at least ten years consecutively before the institution of this suit, which was December 4, 1886; and before you can render a verdict for the defendant you must find from the evidence that Flannagan's, or Flannagan and defendant's, possession of the land in controversy was not only actual, open, notorious, and hostile, but that such possession was also exclusive for a period of ten years prior to the commencement of this suit. The jury are instructed that, though you may believe from the evidence that John Flannagan entered upon the land in controversy under a claim of ownership thereto, more than ten years prior to the commencement of this suit, which was December 4, 1886, and lived in a cabin thereon for more than ten years continuously prior to the commencement of this suit, you cannot render a verdict in this case for the defendant unless you further believe from the evidence that he exercised such visible acts of ownership over the tract of land in controversy for at least ten years prior to the commencement of this suit, which was December 4, 1886, as to make his possession thereof actual, open, and notorious, hostile and exclusive, for a consecutive period of ten years prior to the commencement of this suit."

Of its own motion the trial court also charged the jury, in substance, that the defendant had a good title to the property, and that the jury should so find, provided the evidence established the following facts, to wit: That E. B. Taylor owed Flannagan $150 or $200 for work and labor done; that in payment of such indebtedness Taylor agreed to turn over the land in controversy to Flannagan, and did actually put Flannagan in possession of the property pursuant to said agreement prior to April, 1865; that Flannagan thereafter occupied the property continuously for the space of ten years under a claim of ownership, and that his possession during said period was "actual, hostile, exclusive, open, and notorious."

The trial judge also gave the following instruction at the plaintiff's instance:

"If [the jury] believe from the evidence that John Flannagan lived on the farm described in evidence as the 'Steve Ide Farm' in the year 1873, and while living on such farm did not exercise such visible acts of ownership over the land in controversy as to make his possession thereof actual, open,

and notorious, hostile and exclusive, during the year 1873, and if the jury further believe from the evidence that Jacob Elton cultivated that portion of the land in controversy lying north of the ditch thereon under a lease from the plaintiff for one or more years between 1879 and 1884, then your verdict must be for the plaintiff."

But the trial court qualified the last instruction by the following statement, to wit:

"That is what I am asked to give and that is what I give you with this qualification: This is true, unless said Flannagan had possession of the land as before described for a period of ten consecutive years, either before 1873 or thereafter, before the commencement of this suit."

The plaintiff also asked the trial court to give the following instruction:

"If [the jury] believe from the evidence that John Flannagan lived on land situate near the southwest corner of Fort Omaha during one or more years between 1870 and 1874, and while living at such place he did not exercise such visible acts of ownership over the land in controversy in this suit as to make his possession thereof actual, open, and notorious, hostile and exclusive, during one or more years between 1870 and 1874, and if the jury further believe from the evidence that Jacob Elton cultivated a portion of the land in controversy under a lease from the plaintiff for one or more years between 1879 and 1885, then your verdict must be for the plaintiff."

The court gave this latter instruction as requested, but added thereto the following qualification:

"Provided, the said Flannagan did not have continuous possession of the land as before defined and described herein for ten consecutive years either before 1873 or thereafter, or during that time."

Another instruction, of similar import, that was asked by the plaintiff, was also given by the court, but with a like limitation or proviso, which the court added of its own motion. Complaint is made of the action of the trial court in modifying the foregoing instructions as above indicated.

Inasmuch as the plaintiff offered evidence tending to establish the hypothesis of fact on which the foregoing instructions were predicated, we think that they might well have been given without any modification or proviso. But in view of the fact that the jury returned a special verdict, as they were authorized to do under the Code of Nebraska (Consol. St. Neb. 1891, §§ 4813, 4814), we are not prepared to admit that the action complained of was a material error. The most that can be alleged against the instructions after the modification thereof is that the court assumed that there was some evidence tending to show that Flannagan had been in possession of the property for 10 years prior to 1873, whereas there was no evidence that he entered into possession of the premises before the year 1865. If the verdict had been a general verdict, there would doubtless be some ground for the contention that the jury may have been misled by the false assumption contained in the instructions; but, as the jury found specially, and in accordance with the defendant's evidence, that Flannagan entered into possession of the property in 1865, it is obvious that they were not misled, and that the error complained of was not prejudicial to the plaintiff. Moreover, the special finding by the jury negatives the hypothesis on which the several instructions were based, namely, that Flannagan's possession was not an

actual, adverse possession for one or more years between 1870 and 1874, and was not an exclusive possession for one or more years between 1879 and 1885. The jury manifestly found, in accordance with Flannagan's contention, that he constantly maintained his possession from 1865 to 1885, and that he neither abandoned the property between the years 1870 and 1874, nor acknowledged a right of occupancy on the part of Jacob Elton, or any other person, between the years 1879 and 1885.

When the jury are required by the court to return a special verdict, it is both unnecessary and improper to give instructions upon general principles of law applicable to the case, because the jury are supposed to find and report all the material facts without any instructions as to what will be the legal result of their finding. But, if such instructions are in fact given, and they prove to be erroneous, they will not, ordinarily, affect the verdict. If the verdict returned is a special verdict, erroneous instructions given to the jury touching the rules of evidence that should influence their action may be so far material and important as to justify a reversal; but that result will never follow from the giving of erroneous instructions relative to general rules of law, if the judgment actually rendered, as in the present case, was clearly warranted by the special verdict. Railroad Co. v. Frawley, 110 Ind. 18, 9 N. E. 594; Elliot, App. Proc. § 645, and cases there cited. The instructions now under consideration did not relate to rules of evidence, nor to the mode and manner of weighing the testimony; and for that reason it cannot be said that they had any prejudicial influence upon the verdict. It follows from these views that the modification of the instructions in the respects complained of constitutes no sufficient ground for reversing the judgment, even though we should concede that, if the verdict had been general, the instructions as modified would have been erroneous and misleading.

It is also insisted by the plaintiff that the trial court should have rendered a judgment in his favor because he was an innocent purchaser of the premises in controversy under the mortgage which was executed in his favor by E. B. Taylor on July 28, 1871. This contention, however, is based on the ground that Flannagan was out of possession when the mortgage was executed, and what we have already said concerning the effect of the special verdict is a sufficient answer to the claim that the plaintiff was an innocent purchaser. The jury have found, on what we must regard as sufficient evidence to support the finding, that Flannagan was in possession of the property during the year 1871, and that such possession was actual, open, notorious, exclusive, and hostile. This finding therefore disposes of the claim now made that Flannagan did not have such possession of the premises on July 28, 1871, as was essential to notify purchasers and incumbrancers of his equity, and to put them on inquiry as to his rights.

It is finally contended that the circuit court erred in admitting certain evidence, which is said to have been incompetent, and prejudicial to the plaintiff. The testimony to which this contention relates consists in part of declarations made by E. B. Taylor, in his

lifetime, to third parties, which tended to show that he had given the land in controversy to Flannagan; and in part of declarations made by Flannagan while he was in possession of the property, which tended to show in what character he was then occupying and holding it. Concerning the latter class of declarations, it is sufficient to say that we have no doubt of their admissibility. The testimony was relevant and competent for the purpose of showing that Flannagan claimed to be the owner of the property in fee simple; that such claim was made openly to all inquirers, and that it was not kept secret. The better view is that such declarations, when made in good faith by persons who are at the time in possession of land or tenements, are verbal acts, which may be admitted for the purpose of showing the character of the possession, whether they are in disparagement of the declarant's title or otherwise. Burgert v. Borchert, 59 Mo. 80, 87; Martin v. Bonsack, 61 Mo. 556, 559; Darrett v. Donnelly, 38 Mo. 492, 494, 495, and cases there cited. See, also, Greenl. Ev. (13th Ed.) § 109, and cases there cited. The other declarations that are said to have been made by E. B. Taylor in his lifetime, concerning the admission of which complaint is now made, were proven by the testimony of three witnesses, to wit, C. A. Baldwin, P. O. Hawes, and G. W. Ambrose. The declarations or admissions of Taylor which were proven by Baldwin were so proven in response to questions which appear to have been propounded by counsel who represented the plaintiff, and no motion was made to exclude the testimony after it was elicited. Moreover, no exception was taken, so far as the record shows, to the objectionable testimony that was elicited from the witness Hawes. For these reasons no question arises upon the record touching the competency of the admissions made by Taylor which were proven by the testimony of the witnesses Baldwin and Hawes. We are only called upon, therefore, to decide as to the admissibility of the statement said to have been made by Taylor to Ambrose in the lifetime of the former. This statement was made, as it seems, in the year 1868, and was a statement, in substance, that he, Taylor, owed Flannagan some money, and had not been able to pay it, and that he had accordingly given Flannagan some portion of his land in the northern part of the city of Omaha, which was the section of the city in which the land in controversy is situated. The testimony in question tended to prove that Flannagan had taken possession of the property in dispute as owner under a parol contract of sale, and, inasmuch as the admission was made some years before the execution of the mortgage under which the plaintiff claimed title, and was an admission made against the interest of the party making it, who had since died, we think that it was properly received in evidence. Dickerson v. Chrisman, 28 Mo. 135, 139; Wynn v. Cory, 48 Mo. 346; Greenl. Ev. §§ 147–149.

The result is that an examination of the record has failed to convince us that any substantial error was committed during the progress of the trial, wherefore the judgment of the circuit court is hereby affirmed.