# SETH W. HARDIN

*v.*

# JAMES V. CRATE.

1. COLOR OF TITLE—*good faith.* Where lands were sold for delinquent taxes under a judgment rendered at a special term, and the sale made at a day later than that fixed by law, and this appeared from the recitals in the deed which purported to convey the land, it was color of title, and the grantee will not be charged with bad faith by reason of such recitals. This court having, previous to this sale, intimated that such a sale might be made, and the purchaser having bid the land off and obtained his tax deed before this court held that such a sale could not be made on a day different from that fixed by law, bad faith will not be attributed to the purchaser and holder of the color of title.

2. AGENCY—*good faith.* Where persons owned lands, and their agent, to pay taxes, with their assent, and to strengthen their title, purchased the lands at a sale for delinquent taxes, and received a tax deed for the same, and paid all taxes legally assessed thereon for more than seven successive years, and afterwards sold and conveyed the lands to innocent purchasers, and the agency had ceased about the time the lands passed redemption, and the purchasers reduced the lands to actual possession, and the former owners ceased, from the time the lands were conveyed by the tax deed, to give them any attention by paying taxes or otherwise for more than fifteen

years, and then only sold them, consisting of 1000 acres, by quit-claim deed for $200: *Held*, that bad faith would not be inferred from these circumstances, especially as one of the former owners was a witness in the case, and did not claim that the purchaser at the tax sale paid the taxes or held the land as their agent, nor did he impute any act of bad faith to the holder of the tax title.

3. The relation of principal and agent having terminated after the sale for taxes and before the time for a redemption had expired, bad faith in receiving the tax deed will not be inferred by reason of the existence of their former relation. When the length of time and all of the attendant circumstances are considered, the presumption arises that there was some arrangement between the principals and their agent, rather than that the latter had been guilty of a fraud. The acquiescence in such a purchase by the owners, when fully informed of it, and their long silence unexplained, afford a conclusive presumption of good faith of the purchaser.

4. LIMITATIONS—*sale for taxes.* The fact that the land was sold for taxes eleven years after the tax deed was given, did not destroy the bar of the statute. The claim and color of title made in good faith, with seven successive years' payment of taxes on vacant and unoccupied lands, had then been completed, and merely permitting the land to be sold for taxes did not affect rights thus acquired, and the reduction of the land to possession before the commencement of the suit, completed the bar.

5. COLOR OF TITLE—*payment of taxes—possession.* Where a person holds color of title in good faith, and pays all taxes on vacant and unoccupied lands for seven successive years, the statute does not require that he, to render the bar of the statute complete, should take possession immediately on the completion of the seven years of payment of taxes; it is sufficient if the possession is had before the owner shall take steps to remove the bar.

APPEAL from the Circuit Court of Will county; the Hon. JOSIAH McROBERTS, Judge, presiding.

Mr. E. S. HOLBROOK, for the appellant.

Mr. G. D. A. PARKS, for the appellee.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

We shall not undertake to determine all the questions presented by the record and argued by counsel, but shall direct attention to one which, in the view we take of it, is conclusive of the right of appellant to the land in controversy.

For the purpose of showing color of title, appellee introduced a tax deed from the sheriff to one Stuart, executed January 13, 1845, and also made proof of the payment of taxes, in the name of the grantee, from the year 1846 to 1854, inclusive.

The land was sold for the taxes of 1855, and redeemed by Stuart on the 11th of May, 1858.

It was also proved that, in January, 1858, Stuart, by a contract in writing, sold the land to appellee, who took possession in March, 1858, continued in possession until the commencement of the suit, and paid all taxes assessed from the year 1858 to 1865, inclusive, except a "school house tax," in the year 1860.

On the 30th of November, 1859, a deed to the land was made by Stuart to one Van Fliet, who advanced the purchase money and took a deed as security therefor, by the consent and request of appellee.

Until the possession of appellee, the land was vacant and unoccupied.

It is contended that the deed to Stuart is not color of title, because it is apparent upon the face of it that it was executed without lawful authority, in this, that it discloses that the judgment for taxes was rendered at the October special term of the circuit court of Will county, in the year 1842, and that the land was sold on the 14th of November, by virtue of a precept issued on the 11th of November.

To hold that these objections are fatal to the deed, as color of title, would overthrow a long series of decisions of this court, from the case of *Woodward* v. *Blanchard*, 16 Ill. 425, to the present time. In that case, although the law under which the sale was made was unconstitutional, and the sale void, the deed was held to be color of title, unless bad faith was imputable to the purchaser.

A title, absolutely void in its inception, held by the grantee of the purchaser at the void sale, is color, in the absence of bad faith. *Laflin* v. *Herrington*, 16 Ill. 301.

Any title, which a reasonable man would pay his money for, and pay the annual taxes assessed, is color of title. *Dickenson* v. *Breeden*, 30 Ill. 279.

The objections urged involve questions of law. The judge upon the circuit, who rendered the judgment at a special term, assumed jurisdiction, and no doubt supposed that he could rightfully exercise it. Ignorance of the law can not have the effect to destroy color of title, if acquired in good faith. The objections made, if sustained, would deprive of all the benefits intended to be conferred by the section which declares the holder of the color of title, made in good faith, to vacant and unoccupied land, and who has paid the taxes and taken possession, the owner of the land.

The precept, tested by the decision in *Hope* v. *Sawyer*, 14 Ill. 254, would be invalid. That decision was, however, not made until some years after the execution of the deed to Stuart, and in *Bestor* v. *Powell*, 2 Gilm. 119, it had been intimated that a sale of land for taxes, made on the second Monday after the close of the term, would be valid. The grantee in the deed might well rely upon this intimation, and take the deed in good faith. He could not be presumed to know, in 1845, what might be the decision of the court in 1852.

The deed purports, upon its face, to convey title. It is a grant of the land in the usual form of deeds to lands sold for taxes, and bad faith can not be implied from its recitals.

Though the deed may be, in itself, color of title, the objection is urged, that it was not made in good faith; that Stuart was, at the time of its execution, the agent and attorney of the owners of the land, and could not acquire title to himself.

The proof relied on to establish the bad faith of Stuart, consists of letters written to the owners of the land in 1841, 1842 and 1843. From them it seems that he acted as the agent of the owners for the payment of the taxes. He informs them that the lands were valuable and worthy of attention, but that there were defects in the title, and he thought

it best not to pay the taxes, but suffer the lands to be advertised, and then bid them in at the sale, and obtain a tax title. This suggestion was acquiesced in, and the result was, the deed in controversy.   The steps which resulted in the deed, were known to and acquiesced in by the principals.   The acquirement, then, of the title by the agent must have been in good faith, even conceding that his subsequent conduct and disposition of the lands were wrongful.

Stuart continued to pay the taxes for eight successive years. There is no proof that any funds were furnished to him, and no inquiry is made about these lands from 1843 until 1860, when a deed is made to appellant for a mere nominal consideration, when we consider the large quantity of land conveyed.   During this long interim between the date of the last correspondence and the deed to appellant, the original owners paid none of the taxes and evinced not the slightest interest in the property.

One of the principals was a witness.   He imputes no misconduct to Stuart; does not even claim him as agent only until about 1844, and mentions no act from which bad faith can be inferred.   While agent, the proof shows no neglect of duty, no omission to pay taxes, no misappropriation of any funds entrusted to him.

The last letter from Stuart to Wynkoop, dated November 25, 1843,—after the sale of the lands,—is very significant, in the expression of a willingness to communicate any further information.   A full list of the lands is given, the amount of the taxes, and the time of the sale, which had already occurred. He then says:   " When the time of redemption has expired, and the title perfected as far as it can be, the result will be communicated.   Any further information on the subject I shall be happy to give. "   He further says that he had paid the taxes for 1842 and 1843.

After this no correspondence occurred; no further information was solicited, and, so far as the proof shows, the agency ceased.   It was not a continuing agency.

In 1845, when the color of title was acquired, the presumption, from all the circumstances, is, that the agency had terminated. The relation then having ceased, bad faith can not be imputed to the grantee in the deed, merely because of the former existence of such a relation.

When the principal has made no inquiry, and has slumbered upon his rights for nearly twenty years, the simple act of the agent in bidding in the lands in his own name, should not be ascribed as an act in bad faith. The long and silent acquiescence of the principal, with a presumed knowledge of all the facts, utterly forbids the supposition.

Besides, the purchase of the land at a tax sale, in the name of the owners, could not strengthen their title. They were under a legal obligation to pay the taxes, and could not acquire any greater interest in the lands than they already had, by permitting them to be sold for taxes and purchasing them in their names. Why was it done?

The reasonable inference is, that the purchase by the agent was with the consent of his principals. After the sale, they had full information of his action, and prior thereto it seemed to be the mutual understanding that the lands should be sold for the taxes, and bid in to perfect the title. This act, then, could not have been in bad faith.

In two years after the sale a deed is taken. During this time the owners give no attention to the lands, and nothing is heard from them until fifteen years afterwards, when, by a quit-claim deed, they undertake to convey to appellant over 1000 acres of land for $200.

During this long time no complaint was made against the grantee in the deed. He paid the taxes and made sales of lands, of which possession was taken.

From all the facts, the most probable conclusion is, that there was some arrangement between the agent and his principals, rather than fraud in the former.

The acquiescence in the purchase, when informed of it, and the long silence of the owners of the land unexplained, and

the quiet submission for fifteen years, afford a conclusive presumption in favor of the good faith of the purchaser. *Williams* v. *Merritt*, 23 Ill. 623.

A legitimate presumption of assent should arise from the acts and conduct of the principal, as they are inconsistent with any other supposition than a previous authority. *Delafield* v. *State of Illinois*, 26 Wend. 192.

The law presumes that all acts are done in good faith, unless the contrary is clearly established. The deed imports good faith, unless fraud is proved, or unless the facts and circumstances attendant upon its execution show that the party accepting it had no confidence in it, and took it with a design to defraud the holder of the better title. *Dickenson* v. *Breeden*, *supra*; *McCagg* v. *Heacock*, 34 Ill. 476.

The deed, then, to Stuart, amounted to color of title acquired in good faith; the lands were vacant and unoccupied, and he paid all taxes legally assessed for seven successive years before the commencement of this action. Possession followed in 1858 by appellee, the purchaser from Stuart.

Did the fact that the land was suffered to be sold for the taxes in 1856 destroy the bar perfected under section 9 of the chapter entitled " Conveyances "?

Section 8 requires actual possession, under claim and color of title, made in good faith, and the payment of taxes for seven successive years. Section 9 only requires color of title, made in good faith, to vacant and unoccupied land, and the payment of taxes for seven successive years, and this court has construed it that possession must be taken to complete the bar.

Counsel for appellant insists that, in the construction of the 9th section, possession must follow the color of title and payment of taxes, and that it must be an immediate possession, conjoined to a continuous and uninterrupted payment of taxes for the required period.

We do not understand that the possession must be instantaneous with the completion of the payment of taxes, or that the sale of the land destroyed the bar.

The owner of the color of title may unite actual possession to the color and payment of taxes at any time before the holder of the adverse title shall take some step to remove the bar.

This is a fair construction of the section as a limitation law, and this principle is deducible from the decisions of this court. *Newland* v. *Marsh*, 19 Ill. 376; *Hinchman* v. *Whetstone*, 23 Ill. 190; *Paullin* v. *Hale*, 40 Ill. 274; *Hale* v. *Gladfelder*, 52 Ill. 92.

As no bar was proved under section 8, it is unnecessary to consider the remaining questions presented.

The judgment is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WALKER filed the following separate opinion:

I fully concur in the decision of this case, for the following reasons: It appears from the record, and is clearly shown in the opinion of the court, that Stuart purchased the lands for taxes, and acquired the tax deed, with the full knowledge and consent of Bailey and Reynolds, for whom he was acting as agent for payment of taxes. These facts unmistakably prove that Stuart acted in good faith in acquiring this color of title. After he had thus acquired color of title, he paid all taxes legally assessed upon the land for seven successive years whilst the land was vacant, and the bar of the second section of the act of 1839 would have been complete had Stuart then gone into possession. He could then, had he been in possession, have invoked the bar of the statute against the whole world, except against Bailey and Reynolds, or their grantees. I presume no one will controvert this proposition, as it seems to be in harmony with all previous decisions and the spirit of the statute itself. Stuart had acquired the color of title in good faith for the benefit of his principals, and in the case supposed he could have used it precisely as might any other holder of color of title, except as against the persons for whom he held it.

No one can doubt that Crate, when he purchased, succeeded to all of the rights held by Stuart, and when he reduced the

land to possession, all must concede he could have invoked the bar of the statute, at least to the same extent that Stuart could have done.   This is manifest, and I fully concur in the conclusion announced in the main opinion, that, inasmuch as Bailey and Reynolds, or their grantees, took no steps to obtain a conveyance of this color of title, and to render it available, and did nothing to indicate to the public that they had any claim to Stuart's title; and as Crate purchased without any notice whatever of their claim, he must be held to have, when he took possession under his purchase, obtained a bar against the grantees of Bailey and Reynolds precisely as against all other persons not under disabilities.

If Stuart acted in bad faith with his principals, or has violated any trust reposed in him by Bailey and Reynolds, he can be compelled to account like any other trustee.   But Crate must be protected like any other innocent purchaser of trust property.   He purchased what appeared to be a valid legal title, paid for it, and all without any notice whatever, and he should be permitted to avail himself of the right to set up the bar of the 2d section of the act of 1839.

*Judgment affirmed.*

Mr. JUSTICE SHELDON filed the following dissenting opinion:

I am unable to concur in the views of a majority of the court as to the good faith of Stuart.

It appears, from the record, that he was an attorney at law; that Bailey and Reynolds acquired title to the premises in controversy by redemption as judgment creditors of one Egan; that they, May 1, 1841, conveyed to Brower & Wynkoop, assignees of the former, under a deed of assignment of their property for the benefit of their creditors, the claim against Egan, by virtue of which said redemption was made, being a part of such property.

Brower & Wynkoop, as such assignees, conveyed to the plaintiff August 13, 1860.

Of the three letters from Stuart, referred to in the opinion of the court, as disclosing his relation to said parties, the first one, to Bailey & Reynolds, of March 9, 1841, purports to send enclosed $150, which, with previous remittances, made $650 collected on account of claims in the writer's hands, and also the sheriff's deed of the lands, and a list of expenses in regard to it, and the letter gives information respecting sundry other claims.

The second letter, of April 4, 1842, is also to Bailey & Reynolds, which encloses the abstract of title to the Egan lands, and says: " By the abstract of title, which is correct as the books of record will furnish, you will perceive that Dr. Egan did not have, at the time of sale, a full and perfect title to all the lands included in your deed. I have, therefore, in consultation with others, thought it best not to pay the taxes now, but suffer them to be advertised and then bid them in, and obtain a tax title, which will assure the title in you. The sale will not probably take place till some time next fall. If this course, under the circumstances of the case, meets your approbation, you will please, at your convenience, so inform me. "

The third letter, of date November 25, 1843, is addressed to F. S. Wynkoop. It purports to send a statement as to the " situation and prospect of the Egan lands purchased by B. & R. " in answer to a letter of inquiry by Wynkoop, and advises him of the compromise of one demand, the collection of another, and that there is due on a certain other one, $400; it shows the lands were bid off for taxes November 14, 1842, and says: " You will recollect that these lands embraced in the sheriff's deed were allowed to be advertised for taxes, that they might be bid in for Bailey & Reynolds, and a tax title obtained and added to the former title, which was imperfect. The statement shows what lands were bid in, and what were not advertised because the taxes were paid by rival claimants. The object is to obtain a tax title to all the tracts, as they are advertised and sold. Two years are allowed for redemption.

You will also perceive that the taxes for the years 1842 and 1843 have been paid on all the tracts by me, that have not been paid by other claimants or persons through mistake. The title to the lands is, therefore, in the process of completion as fast as circumstances will permit, the taxes being attended to. The lands are generally valuable, and worthy of attention. When the time of redemption has expired, and the title perfected as far as it can be, the result will be communicated. Any further information wanted on the subject I shall be happy to give."

Nothing further ever occurred between these parties, so far as the record shows.

Wynkoop's statement, referred to in the opinion, is, that Stuart was their agent for said lands a long time, and continued such till 1844.

On the trial it was testified that Stuart resided in the State of New York. At what time he removed from Chicago there, does not appear, further than that the witness had been his attorney for twenty years, and a power of attorney in evidence from Stuart to sell all his lands in Will county, Illinois, of date November 2, 1850, describes him as of the State of New York.

This is all the direct evidence bearing upon Stuart's relation to the parties, or his being divested of it.

The decision of the court rests the validity of the defense upon a bar to the action acquired by Stuart under section 9 of the conveyance act, which is as follows: "Whenever a person having color of title, made in good faith, to vacant and unoccupied land, shall pay all taxes legally assessed thereon for seven successive years, he or she shall be deemed and adjudged to be the legal owner of said vacant and unoccupied land to the extent and according to the purport of his or her paper title."

Stuart's payment of taxes must have been under color of title held adversely to the rightful owner; but, under the state of facts in the case, as I conceive, the law adjudges that

15—60TH ILL.

Stuart did not hold title adversely to Brower & Wynkoop. He was a trustee, and they the *cestuis que trust.*

The payment of taxes must have been under color of title, "made in good faith."

Holding the relation Stuart did, the law, I consider, imputes to him bad faith, in making any claim of title for himself.

Presumptions, instead of being . in his favor, should be against him.

In my view of the law, this statute of limitations never ran for one moment of time in favor of Stuart against Brower & Wynkoop, or this plaintiff, their grantee.