(86 N. W. Rep. 733.)

---

## JAMES B. POWER vs. JOHN KITCHING.

Opinion filed May 17, 1901.

### Statutes—Title—Too General.

Construing Chap. 158, Laws 1899: The title of said statute is as follows: "An act relating to titles to real property." This title is faulty, because too general, but the subject of the act is expressed in the title. It leads, and does not mislead. *Held*, that the law is not unconstitutional, under § 61 of the State Constitution.

### Color of Title—Adverse Possession.

Under said Chap. 158, any person who claims title to real estate in this state may perfect his title thereto by taking and retaining adverse, open, exclusive, and undisputed possession of such real estate for a period of 10 years, and by paying all taxes assessed against the land for said period. The claim of title will suffice, under the statute, if the occupant claims title and ownership in good faith under an in-

strument which constitutes color of title, within the meaning of the law.

**Tax Deed—When Sufficient Color of Title.**

*Held,* that a tax deed in the form prescribed by § 1639, Comp. Laws 1887, issued by the county treasurer, and purporting to be based upon a tax sale of the land, and describing the same, is sufficient, under the statute, to constitute color of title.

**Color of Title—Where Tax the Basis for Deed is Void.**

*Held,* further, such deed will constitute color of title, under the statute, even if the tax upon which it was issued was void by reason of irregularities in the tax proceedings, and irregularities appearing on the face of the deed sufficient to render the deed void on its face will not operate' to defeat the instrument as a color of title.

**Tax Deed—Limitations.**

The statute of limitations embraced in § 1640, Comp. Laws, does not control where the occupant of land claims title by adverse possession under Chap. 158, supra.

**Journal Entries—Impeachment.**

*Held,* that an enrolled bill properly authenticated by the officials of the senate and house of representatives, approved by the governor, and filed with the secretary of state, is conclusive upon the courts, and that the same cannot be impeached, by entries in the journals. Narregang v. Brown Co., (S. D.) 85 N. W. 602.

Appeal from District Court, Griggs County; *Glaspell,* J.

Action by James B. Power against John Kitching. From a judgment in favor of defendant, plaintiff appeals.

Affirmed.

*J. E. Robinson,* for appellant.

The act relating to titles to real property is void. § 61 Const.; *State* v. *Nomland,* 3 N. D. 427; *Richard* v. *Stark Co.,* 8 N. D. 392; *Divet* v. *Richland Co.,* 8 N. D. 65. The tax deed is void because not signed officially. The signing of the name without the official designation is the same as if the signature had been omitted, so far as any official validity is concerned. 2 Blackwell on Tax Titles, § § 865, 871. The deed shows the sale made on November 1, 1887, and not on October 3, 1887,—the day fixed by law. § 1621, Comp. Laws; *Salmer* v. *Lathrop,* 10 S. D. 224. The deed is not given under the seal of the county treasurer, and it does not recite facts showing that the sale was made to the county because there were no other bidders, who offered to pay the amount of the taxes. *Babbitt* v. *Johnson,* 15 Kan. 252; *Morton* v. *Friend,* 13 Kan. 339; *Magill* v. *Martin,* 14 Kan. 1610; *Martin* v. *Wilson,* 28 Kan. 513; *Salmer* v. *Lathrop,* 10 S. D. 226. Since obtaining the tax deed defendant has paid all the taxes charged against the land. But to recover the taxes paid he should have alleged and proved the assessment of the property for taxation and the levy of a valid tax; *Green—*

*land* v. *Swenson,* 4 N. D. 532; *O'Neil* v. *Tyler,* 3 N. D. 53. As the sale was not based on a valid assessment defendant had no lien on the land, and no right to pay even valid taxes so as to recover the same from the owner of the land. *McHenry* v. *Brett,* 9 N. D. 68, 81 N. W. Rep. 65.

*Cole & Martinson* and *Benjamin Tufte,* for respondent.

The title of the statute is sufficient to meet all constitutional requirements. *Nebraska Loan & Building Assn.* v. *Perkins,* 85 N. W. Rep. 67; *Martin* v. *Tyler,* 60 N. W. Rep. 392; *Gillett* v. *McCarthy,* 25 N. W. Rep. 637; *Plummer* v. *Kennedy,* 40 N. W. Rep. 433; *Fort Street Depot Co.* v. *Morton,* 47 N. W. Rep. 227; *Western Union Tel. Co.* v. *Lowry,* 49 N. W. Rep. 707; *Christie* v. *Inv. Co.,* 48 N. W. Rep. 94; *People* v. *Gobles,* 35 N. W. Rep. 91; *Bissell* v. *Heath,* 57 N. W. Rep. 585; *Finnegan* v. *Building Assn.,* 53 N. W. Rep. 1150; *State* v. *Paige,* 11 N. W. Rep. 495; *Ripley* v. *Evans,* 49 N. W. Rep. 904; *Canal Street Co.* v. *Paas,* 54 N. W. Rep. 907; *Lynott* v. *Dickerman,* 67 N. W. Rep. 1143; *Kleckner* v. *Clerk,* 63 N. W. Rep. 469; *State* v. *Bemis,* 64 N. W. Rep. 348; *State* v. *Moore,* 67 N. W. Rep. 56; *Affholder* v. *State,* 70 N. W. Rep. 550; *State* v. *Forkner,* 62 N. W. Rep. 772; *State* v. *Morgan,* 48 N. W. Rep. 314. The tax deed, though void in fact for want of a valid assessment, was *prima facie* good. The tax deed is color of title. *Adams* v. *Osgood,* 84 N. W. Rep. 257; *Lantry* v. *Parker,* 55 N. W. Rep. 552; *Murphy* v. *Doyle,* 33 N. W. Rep. 220; *Sater* v. *Meadows,* 27 N. W. Rep. 481; *Hunt* v. *Gray,* 41 N. W. Rep. 14; *Rickter* v. *Butler,* 48 N. W. Rep. 407; *Gattling* v. *Lane,* 22 N. W. Rep. 227; *Haywood* v. *Thomas,* 22 N. W. Rep. 460. It is immaterial under the statute of limitations, whether the tax deed be valid or void upon its face. It will in any event give color of title. If it were necessary to produce a regular deed and prove compliance with all the preliminary requisites, the statute of limitations would be unnecessary and useless. *Leffingwell* v. *Warren,* 2 Black. 559; *Edgerton* v. *Bird,* 6 Wis. 527; *Hill* v. *Kricke,* 6 Wis. 442; *Sprecker* v. *Wakely,* 11 Wis. 432; *Lindsay* v. *Fay,* 25 Wis. 460; *Oconto Co.* v. *Jerrard,* 50 N. W. Rep. 591; *McMillan* v. *Wehle,* 55 Wis. 685, 13 N. W. Rep. 694; *Whittlesey* v. *Hoppenyan,* 39 N. W. Rep. 355; *Deputron* v. *Young,* 134 U. S. 241, 10 Sup. Ct. Rep. 539; *Gatling* v. *Lane,* 22 N. W. Rep. 227; *Smith* v. *Shattuck,* 12 Ore. 362, 7 Pac. Rep. 335; *Harrison* v. *Spencer,* 51 N. W. Rep. 642; *Ricker* v. *Butler,* 48 N. W. Rep. 407; *Dickinson* v. *Breedin,* 30 Ill. 279; *Wright* v. *Mattison,* 18 How. 56; *Hall* v. *Law,* 102 U. S. 466; *Brooks* v. *Bruyn,* 35 Ill. 392; *Maxson* v. *Huston,* 22 Kan. 643; *Ensign* v. *Barse,* 107 N. Y. 329, 14 N. E. Rep. 400; *Thomas* v. *Stickle,* 32 Ia. 71; *Peck* v. *Comstock,* 6 Fed. Rep. 22; Desty on Taxation, Vol. II, 1884 Ed. § 149, p. 961; *Caruthers* v. *Weaver,* 7 Kan. 110; *Sapp.* v. *Morrill,* 8 Kan. 677; *Cain* v. *Hunt,* 41 Ind. 466; *Seigneuret* v. *Fahey,* 27 Minn. 60; *Buckley* v. *Taggart,* 62 Ind. 236; *Foster* v. *Lentz,* 86 Ill. 415; *Busch* v. *Huston,* 75 Ill. 343; *Stubblefield* v. *Borders,* 92 Ill. 279; *Piatt* v. *Goodell,* 97 Ill.

88; *Wistanley* v. *Meachem,* 58 Ill. 97; *Dalton* v. *Lucas,* 63 Ill. 337; *Webster* v. *Webster,* 55 Ill. 325; *Hardin* v. *Crate,* 60 Ill. 215; *Degraw* v. *Taylor,* 37 Mo. 310; *Moss* v. *Shear,* 25 Cal. 38; *Blackwood* v. *Van Vliet,* 30 Mich. 118; *Pepper* v. *O'Dowd,* 39 Wis. 538; *Dunphy* v. *Auditor General,* 82 N. W. Rep. 55.

WALLIN, C. J.   The plaintiff in this action sues to recover the possession and the value of the use of a quarter section of land situated in the county of Griggs.   It is conceded that plaintiff is the fee-simple owner of the land, unless the defendant has acquired title thereto by virtue of his claim of title pleaded in the answer to the complaint.   The defendant alleges, in effect, that he is the owner and holder of a tax deed which describes the land, a copy of which is annexed to and made a part of the answer.   Said deed is dated on November 2, 1889, and the same was recorded on said date.   The deed named the defendant as grantee therein, and embraces a description of the land in question.   It purports to have been issued pursuant to a tax sale made in Griggs county on November 1, 1887, for the taxes charged against the land in 1886.   The deed is in the form prescribed by § 1639, Comp. Laws, and recites on its face that it is made "between the territory of Dakota, by Knud Thompson, the treasurer of said county, of the first part, and the said John Kitching, of the second part."   Defendant alleges title and ownership under said deed, and that he has been in the quiet possession of said land under said deed ever since the 2d day of November, 1889, and that the said possession of the land by the defendant has been continuous from said date, and the same has been open, notorious, and peaceable.   The answer further states that the defendant has regularly and fully paid all taxes assessed against said lands since said tax deed was issued to him.   Plaintiff served a reply denying the allegations of the answer, and alleging that said tax deed is void on its face, and void because the land was not described in the assessment roll or tax list of 1886, and that no assessor's oath was annexed to the roll in said year.   The defendant concedes that the assessment of 1886 is void, and the trial court so found.   Upon these issues the case was tried to the court, and judgment was entered quieting the title in the defendant.   Plaintiff appeals from the judgment, and demands a trial anew in this court.   The evidence offered below is in the record, and we find no conflict in the same upon any point which we deem material to a proper decision of the case.

The tax deed was issued and recorded, as already stated, and the evidence shows conclusively that the defendant claimed title and ownership of the land under the deed.   Defendant fenced a part of the land, and farmed another portion.   He also placed buildings upon the land, and at the time of the trial resided upon the land. His occupation for farming purposes is shown to have been continuous for a period of over ten years after he received the deed,

N. D. R.—17

258 NORTH DAKOTA REPORTS.

and the evidence is undisputed that the plaintiff never attempted to interfere with the defendant's possession, and that plaintiff never claimed the title of the land, to defendant's knowledge, until this action was commenced on August 13, 1900. Defendant claims title under said deed, and by virtue of his continuous adverse possession of the land for a period of over ten years, together with payment of all taxes charged against the land during said period, and bases his claim of title upon Chap. 158 of the Laws of 1899. See Rev. Codes 1899, § 3491a. This statute was approved March 8, 1899, and took effect July 1, 1899. Under the terms of said statute the defendant's title to the land did not mature or become perfect until November 2, 1899. There was therefore a period of over seven months after the approval of the law by the governor, and a period of over four months after the law took effect, within which an action might have been brought against the defendant to determine his adverse claim of title. Said chapter, therefore, when applied to conditions established in this case, did not operate to unreasonably abridge the period within which an action might be brought to determine defendant's claim of title. A purchaser at a tax sale has no vested right in the statute of limitations in force at the date of sale. The statute may be changed and shortened by subsequent legislation, provided, always, that a reasonable time is allowed within which actions may be brought. See a full discussion of this point in *Osborne* v. *Lindstrom,* 9 N. D. 1, 81 N. W. 72, 46 L. R. A. 715; *Keith* v. *Keith,* 26 Kan. 26.

But appellant's counsel claims that the statute embraced in Chap. 158, Laws 1899, is unconstitutional, and hence void, under § 61 of the State Constitution, which is  follows: "No bill shall embrace more than one subject, which shall be expressed in its title," etc. In support of this point counsel cites a number of cases decided by this court in which this section has been construed. We think none of the cases are in point, because in all of them the facts are wholly unlike those in the case under consideration. For the purposes of a decision, each case must stand upon the language employed by the legislature, and must be governed by its own peculiar facts and conditions. But the authorities are uniform to the point that similar constitutional restrictions upon legislative action should have a liberal construction in the courts. A narrow interpretation of the language would require the title of all bills to embrace a statement of the details and particular features to be found in the body of the act. Any such rigid rule would, in our opinion, lead to abuses more intolerable than those which were sought to be corrected by the constitution. The object was to correct a certain abuse. In earlier times legislatures had not infrequently enacted laws under false and misleading titles, and thereby concealed from the people, as well as from members of the legislative body, the true character of laws so enacted. To prevent such an abuse, the constitution declares, in effect: (1) No law shall embrace more than one subject; (2)

such subject must be expressed in the title of the bill. Tested by this language, we are convinced that the statute in question is not obnoxious to the constitution. The title is certainly not a model. It is extremely general in its reference to the subject of the law, as the same is set forth in the body of the enactment. Nevertheless the title does refer to the subject of the enactment, and refers to nothing else and nothing different. The law itself deals with the matter of acquiring title to real estate in a particular manner, which is detailed in the body of the law. The title declares that the bill which embraces the law is "an act relating to title to real property." We think the subject of the law is "expressed in the title." True, it does not indicate the particular features of the law, but it certainly points out the subject of the law, and does so with accuracy. Hence this point will be ruled against the appellant.

Turning now to the statute under which defendant claims title, we discover from its language that the legislative purpose in its enactment was to validate or make perfect defective titles to land. It declares: "All titles to real property vested in any person or persons * * * shall be and the same are declared good and valid in law. any law to the contrary notwithstanding." This validation of title, however, can be accomplished only by fully meeting the requirements laid down in the statute. The benefits of the statute can be realized by only those "who have been or hereafter may be in the actual open, adverse and undisputed possession of the land under such title for a period of ten years and shall have paid all taxes and assessments legally levied thereon." As has been seen, the defendant in the case at bar has shown by undisputed testimony that he has fully complied with the requirements of this statute with reference to the duration and character of his adverse possession of the land, and also with respect to the payment of the taxes assessed thereon.

There remains therefore for consideration only one further question, viz: whether the tax deed under which the defendant claims that title has vested in him is a sufficient title to sustain the defendant's contention. This question, under the authorities, is one of no little difficulty. Judicial opinion upon it is abundant, but there is much conflict in the decisions of the courts, and no little confusion has resulted therefrom. In this court the questions for determination are entirely new, and we are therefore neither governed nor hampered by precedents of our own making. We remark, first, that the defendant, to sustain his tax deed, neither relied upon nor pleaded in bar of the action the special statute of limitations which was in force when the land was sold for taxes, and is found in § 1640, Comp. Laws. Such a defense, had it been pleaded, would have been unavailing under the facts in this record. It is conceded that the pretended tax for which the land was sold was never assessed. This defect in the tax proceedings is, under the repeated decisions of this court, one which goes to the groundwork of the tax,

and operates to defeat the jurisdiction of the taxing officers. A tax deed based on a sale for such pretended taxes, though regular on its face, would be voidable, and would be vacated in any action brought to avoid the same: nor would such a deed be protected by the statute of limitations. See *Roberts* v. *Bank*, 8 N. D. 504, 79 N. W. 1049; *Sweigle* v. *Gates*, 9 N. D. 538, 84 N. W. 481. It would follow necessarily from these precedents that, if the defendant's claim of title rested entirely upon the validity of the tax deed set out in his answer, his claim would be worthless and held for naught. But defendant does not rest his claim of title solely upon the validity of his tax deed. His title depends upon a special statute which forms no part of the revenue laws of the state, and which nowhere refers in terms either to taxes or tax titles. The benefits of the statutes are intended for all who are vested with imperfect titles to real estate, and are not limited to persons holding tax titles. The statute (Chap. 158, Laws 1899) establishes a mode and manner of acquiring title to land which is new to this state. Under this statute, title is not acquired until each of three prescribed conditions are fully met: First, the claimant must be vested with some sort of title; second, he must occupy the land, under claim of title thereto, openly, adversely, and exclusively, for a period of ten years; finally, the claimant must pay all taxes assessed against the land for such period. The only difficulty presented in this case is to determine whether the defendant is vested with a sufficient title or color of title to the land to come within the benefits of the statute. At common law, as well as under the Code, of this state, a valid title to land is created by 20 years of adverse occupancy under claim of title. The claim of title, to be effectual, may rest upon a writing or upon a decree of a court, or may rest in parol, merely, and not upon any writing. See Rev. Codes 1899, § § 3491, 5191-5195, inclusive. But the payment of taxes is not essential in acquiring title at common law, or under the general statutes governing the matter of 20 years' adverse possession. But the legislature in the act of 1899 has seen proper, on the one hand, to shorten the period of adverse occupancy to 10 years, and, on the other, to add a new condition, viz: that of the payment of all taxes. The act of 1899 does not attempt to define the nature of the title upon which the claimant under the statute may rest as a basis upon which to build up a title by adverse possession and the payment of taxes. It becomes necessary therefore, to have recourse to general principles of law in solving this question. In this respect we have derived no aid from the brief of counsel for the appellant. Counsel has relied upon the claim that the act of 1899 is unconstitutional on the ground above indicated, and upon the further ground that the tax deed annexed to the answer is wholly void, and this for reasons dehors the deed, as well as upon the ground that the instrument, as counsel claims, is void upon its face. The tax deed was signed with the name of the county treasurer, but to this was not appended his official designation. The

deed was not under seal, except as follows: "(Seal.)" There were defects, also, appearing on the face of the deed, to which counsel calls attention, and which he claims operate to make the deed void on its face. Without deciding the question, we shall assume, for the purposes of this case, that the deed is void on its face. Conceding this fact, it is nevertheless true that the instrument is in the form of a deed of conveyance prescribed by the statute, and was made and delivered by an officer having general authority to sell land for delinquent taxes, and to execute and deliver tax deeds describing the land so sold. Such a deed was delivered to the defendant. It described the land, and purported, in terms, to convey a title in fee simple to the defendant. It is under such a deed that the defendant, a layman, claims title, and there is no suggestion in the record that the defendant has not at all times in good faith relied upon this deed as the basis of his claim of ownership. Is this deed sufficient to sustain the defendant's claim of title? Standing alone, the deed is worthless. But we are of the opinion, and shall so rule, that it is a sufficient color of title to serve as a basis upon which defendant, under the statute, can predicate a good title to the land. There are decisions, and those made by courts of high rank, holding that deeds of conveyance void on their face do not constitute color of title, and this is the holding in a number of states. See 25 Am. & Eng. Enc. Law. (1st Ed.) p. 704. But upon this point there is great conflict in the cases. We cite below some of the many cases which hold that instruments which describe the land and purport to convey the same will give a color of title upon which a claim of title by adverse possession may rest, even when for other reasons the instruments may be void. There seems to be great unanimity in the holdings that a tax deed regular on its face, even when voidable on account of fundamental defects in the antecedent tax proceedings, will constitute color of title, within the meaning of the law governing the acquisition of title by adverse possession. See Id., and authorities in note 2. But the cases are numerous which hold that an instrument void on its face for certain reasons may nevertheless be good as color of title on which to found a claim of title by adverse possession. See *Deputron* v. *Young,* 134 U. S. 241, 10 Sup. Ct. 539, 33 L. Ed. 923; *Gatling* v. *Lane,* (Neb.) 22 N. W. 227; *Hamilton* v. *Boggess,* 63 Mo. 233; *Wilson* v. *Atkinson,* 77 Cal. 485, 20 Pac. 66, 11 Am. St. Rep. 299; *Edgerton's Adm'r* v. *Bird,* 6 Wis. 527, 70 Am. Dec. 473, citing *Wright* v. *Mattison,* 18 How. 50, 15 L. Ed. 280; *Smith* v. *Shattuck,* (Or.) 7 Pac. 335; *Ricker* v. *Butler,* 45 Minn. 545, 48 N. W. 407; *Railway Co.* v. *Allfree,* 64 Ia. 500, 20 N. W. 779; *Stevens* v. *Johnson,* 55 N. H. 405. As to defective and void titles, see Sedg. & W. Tr. Tit. Land, § 780, and authorities cited in note 7; *Lantry* v. *Parker,* (Neb.) 55 N. W. 962; *Sater* v. *Meadows,* (Iowa) 27 N. W. 481; *Murphy* v. *Doyle,* (Minn.) 33 N. W. 221; *Hardin* v. *Crate,* 60 Ill. 215; *Piatt Co.* v. *Goodell,* 97 Ill. 88; *Harrison* v. *Spencer,* (Mich.) 51 N. W. 642; *Pillow* v.

*Roberts*, 13 How. 472, 14 L. Ed. 228; *Brooks* v. *Bruyn*, 35 Ill. 392; Black, Tax Titles, § 502. In the section last cited the author defines color of title as follows: "Any instrument having a grantor and grantee, and containing a description of the lands intended to be conveyed, and apt words for their conveyance, gives color of title to the lands described." The Suprme Court of the United States (*Wright* v. *Mattison*, 18 How. 56, 15 L. Ed. 283), adds the following: "The courts have concurred, it is believed, without an exception, in defining color of title to be that which in appearance is title, but which in reality is no title." Id. Many additional authorities might be cited, but, as already stated, there is a wide divergence of judicial opinion, and much conflict in the cases, upon the question of what constitutes color of title, and particularly whether a deed so irregular as to be void on its face will constitute color of title for the purpose of proving title by adverse possession. The deed in suit is one made *prima facie* evidence of title by statute. It has a grantor and a grantee. It contains a description of the land, and apt words showing an intent to convey. It came from an officer clothed with authority to sell land for taxes, and to give deeds therefor. We therefore hold, under what we deem to be the better authority, that the deed in question is a sufficient color of title upon which defendant can build a claim of ownership by adverse possession. The judgment of the trial court will be affirmed. All the judges concurring.

### ON PETITION FOR REHEARING.

The defendant asks for a rehearing in this court upon several grounds relating to points discussed in the original opinion in this case. As to such points, it is enough to say that the views of the court have undergone no change since the decision was handed down, and that the same, therefore, will be adhered to, without further attempts at elucidation. But the petition embraces one point not referred to in any way upon the argument in this court. The fact that the point is first mentioned in a petition for a rehearing would, alone, justify a denial of the petition. See *Sweigle* v. *Gates*, 9 N. D. 538, 84 N. W. 481. But in this case a denial of the petition may safely rest upon the merits. The petitioner claims that the statute referred to in the original opinicn, and relied upon by the defendant (Chap. 158, Laws 1899), was never enacted or passed by both branches of the legislative assembly. It is conceded that a bill (No. 121) embracing the statute originated in the senate, and, after passing that body, that it was regularly transmitted to the house of representatives; and it is further conceded that the house journal shows that the bill was amended in the house, and after being amended was regularly passed by the house, and that upon the day of its passage in the house it was certified or messaged to the senate by the chief clerk of the house, and that such crtificate of the clerk stated, in effect, that the bill was returned to the senate "unchanged," thereby declaring that the bill had not been amended in

the house of representatives. It is further conceded that, after the measure was returned to the senate, it was regularly signed there, but the journal of the senate is silent as to any passage of the measure by the senate after its return from the house. It is noticeable that the petition nowhere states that said Chap. 158, as published in the Session Laws of 1899, is not a copy of an enrolled senate bill which is on file in the office of the secretary of state. The existence of an enrolled bill on file with the proper state official seems to be studiously ignored by the petitioner. Until the contrary is made to appear, courts are bound to presume that the published statute is in fact a true copy of the bill in the office of the secretary of state. In this case, however, the writer has been at pains to verify this legal presumption, and by a search has ascertained the fact that the published statute is a verbatim copy of the law on file, and that the original enactment is not only signed by the governor, but is further authenticated by the president and secretary of the senate, and by the speaker and chief clerk of the house of representatives. The petitioner reminds the court that the court is in duty bound to judicially notice the journals of both branches of the legislature; but the petition does not advise the court respecting any rule of law which is to govern courts in a case such as this, where the legislative journals are at loggerheads with each other, and where it will become necessary, in deciding a question of fact, to accept one part of the record evidence, and disregard another. That such a conflict of evidence exists in this case is manifest. The house journal shows affirmatively that the bill was amended in that body, and that it passed after such amendment. But the senate journal shows affirmatively that a sworn officer of the house—its chief clerk—certified that the bill was returned to the senate "unchanged," which means and must mean that the measure was not amended in the house. There is also strong negative evidence that the bill was not amended in the house. Had it been so amended, it would have been necessary to again pass it in the senate before it could take effect as a law, or be officially signed and sent to the governor for approval. But the senate journal is silent as to any such action after the bill was returned to the senate. The senate journal only shows that the bill was signed officially in the senate after being transmitted from the house. This silence of the senate journal, while negative in character, is nevertheless strong evidence that the bill never was amended in the house. We refer to these conflicts in the evidence, however, only to show that there is evidence to be found in the journals of the two houses bearing upon both sides of the question of fact to be determined, viz: whether the published law was in fact ever enacted by both branches of the legislature. The evidence of the journals being conflicting, it will be necessary to consider the evidential effect of the enrolled bill properly authenticated and on file with the secretary of state. Which shall prevail? Which possesses the greater probative force,—the conflicting evidence of the journals,

upon one side, or, on the other side, the positive evidence, consisting of the authenticated bill found in the hands of the official custodian of the laws? Many courts have attempted to answer this question, and judicial tribunals of the highest respectability have widely differed in their answers. But we are inclined to the opinion that the better reason, as well as the greater weight of authority, will be found to preponderate in favor of the evidence to be found in the bill itself, when properly authenticated. The Supreme Court of South Dakota, in a very recent case, has reached this conclusion; and in its opinion the court has exhaustively considered, and very ably discussed, the leading cases bearing upon the question. See *Narregang v. Brown Co.,* (S. D.) 85 N. W. 602; also page 605, Id. We are satisfied with the reasoning contained in the opinion in the case cited, and we shall therefore content ourselves with a citation of that case and the authorities found in it. The petition is denied. All the judges concurring.