SCHAUBLE et al. v. SCHULZ.

(Circuit Court of Appeals, Eighth Circuit. April 14, 1905.)

No. 2,038.

1. ADVERSE POSSESSION—STATE STATUTES—RETROACTIVE OPERATION.
Rev. Codes N. D. 1899, § 3491a, providing that all titles to real property vested in any person or persons, who have been or hereafter may be in actual, open, adverse, and undisputed possession of the land under such title for a period of ten years, and shall have paid all taxes and assessments legally levied thereon, shall be and the same are declared good and valid in law, etc., is retroactive in operation, in that it gives effect to adverse possession and payment of taxes preceding its enactment.

2. SAME—PROPERTY RIGHTS—DUE PROCESS OF LAW—REASONABLE PERIOD OF LIMITATION.
Rev. Codes N. D. 1899, § 3491a, providing for the creation of title by adverse possession for ten years, accompanied by payment of all taxes and assessments, is not unconstitutional, as a deprivation of property without due process of law, as against one who, at the time of the approval of such statute, had failed for nine years to assert any title to the premises or to pay taxes thereon, and who had at least a year after such approval in which to bring suit to recover possession; that being a reasonable time for that purpose.

3. SAME—COMPUTATION OF PERIOD.
Under Rev. Codes N. D. 1899, § 3491a, providing for the establishment of title by adverse possession of ten years, together with payment of all

taxes and assessments, the prescribed period begins with the adverse possession, and not on the date of the first payment of taxes accompanied by adverse possession.

4. SAME—VENDOR AND PURCHASER—CONTRACT TO CONVEY—FULFILLMENT—EFFECT.

Possession of a vendee who entered under an executory contract of sale, and who subsequently received a conveyance in fulfillment thereof, was adverse from the time of his entry as to all but the vendor, and was adverse as to him from the date of the vendee's compliance with the condition of the contract entitling him to a conveyance.

[Ed. Note.—For cases in point, see vol. 1, Cent. Dig. Adverse Possession, §§ 343, 354–357.]

5. SAME—LIMITATIONS—SUSPENSION OF PERIOD—MINORITY OF PARTIES.

Rev. Codes N D. 1899, § 5198, providing that the time during which one is within the age of twenty-one years shall not be a part of the periods "in this article" limited for commencing actions or making entry on real property, does not apply to section 3491a, which is not a part of such article, and provides that all titles to real property vested in any person, who may have been or hereafter may be in adverse possession under such title for a period of ten years, and shall have paid all taxes and assessments legally levied thereon, shall be declared good and valid in law, "any law to the contrary notwithstanding."

6. SAME—INFANTS MAY BE SUBJECTED TO SAME LIMITATIONS AS ADULTS.

The exemptions from the operation of statutes of limitation usually accorded to infants do not rest upon any fundamental doctrine of the law, but only upon express provision therefor in such statutes. It is competent for the Legislature to put infants and adults upon the same footing in this respect, and this is the effect of a statute containing no saving clause exempting infants.

[Ed. Note.—For cases in point, see vol. 33, Cent. Dig. Limitation of Actions, §§ 390–398.]

Appeal from the Circuit Court of the United States for the District of North Dakota.

Subject to a mortgage theretofore executed to James Middleton, Michael McNulty was, on June 10, 1887, the owner of the south half of section 7, township 140 north, range 57 west, in Barnes county, Dakota, now North Dakota. On that day the land was sold, subject to the mortgage, under a judgment against McNulty rendered upon default in the district court of Barnes county in a proceeding in attachment, the only notice of which was given by publication. The attachment proceeding was somewhat irregular, and some of the defects may have been such as to subject the judgment and sale to collateral attack. After the sale McNulty paid no attention to the land, and ceased to pay the taxes and assessments thereon. He died intestate June 6, 1896, leaving the appellants as his heirs at law. Two of them are minors. June 15, 1888, the sheriff of Barnes county executed a deed for the land to the holder of the certificate given at the sale, and this title afterward passed to Middleton, the mortgagee. On March 29, 1890, the appellee entered into possession of the land under an executory contract for its sale to him by Middleton. The contract authorized the appellee to take possession, and required him to pay all taxes and assessments subsequently levied. October 10, 1892, Middleton, who still held the mortgage, executed to the appellee a deed for the land, with full covenants of warranty, in fulfillment of the contract. From the time of his original entry the appellee has had the actual, open, and undisputed possession under the title given by the sheriff's deed. During the continuance of the contract his possession was adverse to every one excepting Middleton, and since the fulfillment of the contract his possession has been adverse to all the world. The taxes and assessments for the years 1887 to 1889, both inclusive, were paid by Middleton before the contract was made. The taxes and assessments for the years 1890 to 1900, both inclusive, were paid by the appellee from time to

time between August 13, 1891, and October 31, 1901; those for 1898 were paid September 19, 1899; those for 1899, October 31, 1900; and those for 1900, October 31, 1901. The taxes for the year 1901 were also paid by him, November 15, 1902. This suit was commenced by the appellants July 28, 1902, and its purpose seems to have been to quiet the title against all claim under the sheriff's deed, to recover the possession with damages for its occupancy by the appellee, and to redeem from the appellee as a mortgagee in possession, if he should be deemed to have that status. At the final hearing a question was raised as to the character of the suit, and the parties entered ino a stipulation declaring their desire to obtain a determination of all their rights in respect of the land, both legal and equitable. The decree dismissed the bill upon the merits.

Frank McNulty, for appellants.

Edward Winterer (Herman Winterer, on the brief), for appellee.

Before SANBORN, VAN DEVANTER, and HOOK, Circuit Judges.

VAN DEVANTER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It will be necessary to consider only the defense that the title under the sheriff's deed was rendered good and valid by the appellee's continuous adverse possession of the land for a period of ten years and his payment of all taxes and assessments levied thereon during that period. A statute of the state of North Dakota, entitled "An act relating to the title to real property," which was approved March 8, 1899, and took effect July 1, 1899, declares:

"All titles to real property vested in any person or persons who have been or hereafter may be in the actual, open, adverse and undisputed possession of the land under such title for a period of ten years and shall have paid all taxes and assessments legally levied thereon, shall be and the same are declared good and valid in law, any law to the contrary notwithstanding." Laws 1899, p. 230, c. 158 (Rev. Codes 1899, § 3491a).

The words, "have been or hereafter may be," unequivocally express an intention that the statute shall have a retrospective operation in the sense of giving effect to adverse possession and payment of taxes occurring before it became a law, and this prevents the application of the general rule of interpretation that statutes are to be given a prospective rather than a retrospective operation. Osborne v. Lindstrom, 9 N. D. 1, 6, 81 N. W. 72, 46 L. R. A. 715, 81 Am. St. Rep. 516; Sohn v. Waterson, 17 Wall. 596, 21 L. Ed. 737; Stephens v. Cherokee Nation, 174 U. S. 445, 447, 19 Sup. Ct. 722, 43 L. Ed. 1041; Lamb v. Powder River Live Stock Co., 65 C. C. A. 570, 132 Fed. 434. Evidently because of the clear expression of this intention, the Supreme Court of the state, without specially discussing that feature of the statute, has held that it renders good and valid the title of one who, under an invalid tax deed, has held adverse possession of the land for ten years, and has paid the taxes and assessments for those years, although all but about eight months thereof preceded the enactment of the statute. Power v. Kitching, 10 N. D. 254, 86 N. W. 737, 88 Am. St. Rep. 691.

The important question arising upon the statute, as applied to a case like the present, is whether it extinguishes rights arbitrarily, and therefore violates the fourteenth amendment to the national

Constitution, which declares that no state shall deprive any person of property without due process of law. It is an essential requisite of due process of law that full opportunity be afforded for the assertion and enforcement of the right after it comes within the present or prospective operation of such a statute and before the extinguishment takes effect. A statute which does not afford this opportunity is arbitrary, and violates the constitutional prohibition, but, if the opportunity be afforded, it is no objection to the statute that it has some regard to the past acts and omissions of the parties concerned, or to conditions produced by past occurrences, and is therefore not wholly prospective. Terry v. Anderson, 95 U. S. 628, 24 L. Ed. 365; Vance v. Vance, 108 U. S. 514, 2 Sup. Ct. 854, 27 L. Ed. 808; McGahey v. Virginia, 135 U. S. 662, 708, 10 Sup. Ct. 972, 34 L. Ed. 304; Wheeler v. Jackson, 137 U. S. 245, 255, 11 Sup. Ct. 76, 34 L. Ed. 659; Turner v. New York, 168 U. S. 90, 18 Sup. Ct. 38, 42 L. Ed. 392; Wilson v. Iseminger, 185 U. S. 55, 62, 22 Sup. Ct. 573, 46 L. Ed. 804; Keyser v. Lowell, 54 C. C. A. 574, 117 Fed. 400; Lamb v. Powder River Live Stock Co., 65 C. C. A. 570, 132 Fed. 434. Whether such an opportunity is afforded is usually a question of the reasonableness of the time, and this depends, in some measure, upon the nature of the right and of the acts and omissions which condition its extinguishment.

Unlike ordinary statutes of limitation which convert adverse possession into perfect title after a prescribed period of years, this statute contains a provision designed to encourage the payment of taxes and assessments on land the title to which is uncertain, and, as a protection to one who unites adverse possession for the period of ten years with the payment of all taxes and assessments for those years, it declares his title good and valid, although the period of adverse possession otherwise effective under the laws of the state is twenty years. Rev. Codes 1899, §§ 5188–5192. In a limited sense the statute partakes of the nature of a revenue measure which, consistently with due process of law, may have a more summary operation than other laws. Leigh v. Green, 193 U. S. 79, 89, 24 Sup. Ct. 390, 48 L. Ed. 623. It is a matter of common knowledge that the obligation to pay taxes, particularly such as are leviable and payable at fixed times in each year, is a necessary incident of the ownership of land, and that its neglect is usually followed by the loss of the title in a comparatively short period. In any case coming within the terms of the statute the title of the defaulting claimant would almost certainly have been extinguished by a sale of the land for taxes, but for their payment by the adverse claimant in possession. It is difficult to perceive why, as between two persons holding adverse titles to land, the failure of one to either pay taxes or assert a right to the possession for several years may not justly be made the ground of requiring a comparatively prompt assertion of title, at the risk of its extinguishment in favor of the other claimant, when, during the same years, he has paid the taxes and has been in actual, open, adverse, and undisputed possession.

The facts of the present case are these: The statute was approved March 8, 1899, and became a law July 1, 1899. When it was approved the appellee had been in the actual, open, adverse, and undisputed possession of the land for nine years, and had paid the taxes and assessments levied thereon during the first eight of those years. The taxes for the ninth year were then payable but unpaid, and those for the tenth year were as yet not due. The appellee paid the taxes for the ninth year September 19, 1899, and those for the tenth year October 31, 1900. His adverse possession was continued in the meantime as before. The two things—adverse possession for a period of ten years and payment of the taxes and assessments levied during that period—could not concur until March 29, 1900, ten years after the adverse possession began. They did not actually concur until October 31, 1900, when the taxes for the tenth year were paid. Computing the time with reference to their possible concurrence on March 29, 1900, there remained after the statute was approved a period of a little over one year within which the appellants could have protected their title by the payment of taxes or by the assertion of a right to the possession. Either would have prevented the title of the appellee from being made good and valid under the statute. Computed with reference to what actually occurred, the remaining period within which the appellants could have protected their title was a little over one year and seven months. If regard were had to the date when the statute became a law rather than to the date of its approval, these periods would be shortened a little more than three months; but this is not permissible, because it is settled by the decisions of the Supreme Court of North Dakota that the statute was effective as notice of its prospective operation from the date of its approval. Power v. Kitching, 10 N. D. 254, 258, 86 N. W. 737, 88 Am. St. Rep. 691; Merchants' National Bank v. Braithwaite, 7 N. D. 358, 372, 75 N. W. 244, 66 Am. St. Rep. 653; Osborne v. Lindstrom, 9 N. D. 1, 8, 81 N. W. 72, 46 L. R. A. 715, 81 Am. St. Rep. 516. When, therefore, the appellants became charged with notice of the prospective operation of the statute, there remained in any event a period of one year before the appellee's title could become good and valid and theirs extinguished. In view of the conduct of the parties during the preceding nine years—the active assertion of title by one and the nonassertion of title by the other, the regard shown by one for the owner's obligation to pay the taxes levied on the land and the disregard shown by the other for that obligation—we think the time remaining was reasonable, and that it afforded the appellants full opportunity to assert and protect their title before it could be extinguished, and that of the appellee rendered good and valid under the terms of the statute. Terry v. Anderson, Wheeler v. Jackson, Turner v. New York, and Power v. Kitching, supra.

As the first payment of taxes was made August 13, 1891, it is insisted that the ten-year period cannot be reckoned from March 29, 1890, when the adverse possession began, but must be reckoned from August 13, 1891, when payment of taxes was united with adverse possession. It must be held otherwise. The same question

was presented in Beaver v. Taylor, 1 Wall. 637, 17 L. Ed. 601, in respect of a similar statute in the state of Illinois, and it was held, following the decisions of the Supreme Court of that state, that the prescribed period begins with the adverse possession, and that it is not necessary that each year's taxes be paid within that year. The direct question does not appear to have been presented to the Supreme Court of North Dakota, but the inference to be drawn from the decisions of that court in Power v. Kitching, supra, and Streeter Company v. Fredrickson, 11 N. D. 300, 91 N. W. 692, is that the requirement of the statute in this respect is satisfied by the payment of all taxes and assessments levied during the prescribed period of adverse possession, and that the concurrence of adverse possession and such payment, although ultimately essential, is not necessary to start the time to running. We think this is the reasonable and correct interpretation of the statute.

Referring to the fact that the taxes for the year 1901 were due when the suit was commenced, but were not paid by the appellee until after that time, it is urged that the case is not within the statute. The fault in this contention is that 1901 was the twelfth year of the adverse possession, and not part of the ten-year period. The appellee's title was brought clearly within the protection of the statute on October 31, 1900, when he united with ten years of adverse possession the payment of all the taxes levied during those years. No taxes were then due and unpaid, because those for the eleventh year, 1900, were not due until November 1st of that year. Rev. Codes 1899, § 1256. It could hardly have been intended that a title once rendered good and valid by adverse possession and payment of taxes would be invalidated or opened to attack if the taxes of some subsequent year should become due and be unpaid.

The appellee's possession from March 29, 1890, to October 10, 1892—without which the possession would not cover ten years— was under an executory contract for the sale of the land, and the contention is made that during this possession under the contract the appellee did not have title or color of title, and that the statute applies only where the adverse possession is under some sort of title. The contract was between Middleton, the holder of the title under the sheriff's deed, and the appellee. It states that Middleton "hereby sells and agrees to convey" the land to the appellee upon his compliance with certain conditions, principally relating to the payment of the purchase price, and that the appellee agrees to comply with these conditions. There are also provisions giving the appellee the right to the possession and requiring him to pay all future taxes and assessments. When the contract was entered into a partial payment was made upon the purchase price and the appellee entered into possession. By subsequent compliance with the conditions of the contract he entitled himself to receive the conveyance which was executed October 10, 1892. The conveyance did not create a new right, but rather perfected the right existing under the contract, and, to give effect to what was plainly the intention of the parties, the perfected title related back to the date of the contract. Peyton v. Desmond, 63 C. C. A. 651, 661, 129 Fed. 1.

It is now the generally accepted rule that the possession of a vendee who enters under an executory contract for the sale of land, and subsequently receives a conveyance in fulfillment thereof, is adverse from the time of the entry as to all the world except the vendor. Howland v. Newark Cemetery Association, 66 Barb. 366; Simpson v. Sneclode, 83 Wis. 201, 53 N. W. 499; Montgomery County v. Severson, 64 Iowa, 326, 17 N. W. 197, 20 N. W. 458; Clapp v. Bromagham, 9 Cow. 530, 550; Whitney v. Wright, 15 Wend. 171, 180; Bank v. Smyers, 2 Strob. 24. And from the moment the vendee by compliance with the conditions of the contract entitles himself to a conveyance his possession is adverse as to the vendor. Ward v. Cochran, 18 C. C. A. 1, 5, 71 Fed. 127; Briggs v. Prosser, 14 Wend. 227. It is also the accepted rule in the state of North Dakota that a vendee in possession under a contract like the one before us is the equitable and beneficial owner of the land, and that the vendor holds the legal title in trust for him, and as security for his compliance with the conditions of the contract. Nearing v. Coop, 6 N. D. 345, 349, 70 N. W. 1044; Moen v. Lillestal, 5 N. D. 327, 331, 65 N. W. 694. The conclusion follows that the appellee was from the time of his entry vested with sufficient title, as against the appellants, to come within the protection of the statute, which broadly includes "all titles."

Two of the appellants are minors, and it is urged in their behalf that they are excepted from the operation of the act of March 8, 1899. It is said of this act in Streeter Company v. Frederickson, supra, that it "is entirely unlike the statutes of limitations common in most of the states, and also the 20-year limitation statute of this state. In fact, it is so dissimilar that its identity as a statute of limitations is almost obscured." An examination of the state statutes shows that section 5198, Rev. Codes 1899, which is claimed to make the exception, is part of a subdivision in the Code of Civil Procedure limiting the periods within which actions can be commenced. The first section of the subdivision declares that its provisions shall be applicable "except when in special cases a different limitation is prescribed by statute"; and section 5198 provides, inter alia, that the time during which one is within the age of 21 years shall not be a part of the periods "in this article" limited for commencing actions or interposing defenses or counterclaims thereto or making entry upon real property. The act of March 8, 1899, is not part of the Code of Civil Procedure or of the subdivision or article limiting the periods within which actions can be commenced, but is a distinct and later statute, which declares that it shall have effect according to its terms, "any law to the contrary notwithstanding." It is evidently intended to be complete in itself, and to prescribe a different limitation for a special class of cases. Indeed, it is unlike the ordinary statutes of limitation, in that it contains no reference to the commencement of actions, suits, or other judicial proceedings, and makes the affirmative action of the claimant in adverse possession rather than the inaction of the other claimant the criterion of its operation upon the title. It contains no exceptions, and it so plainly indicates that in itself it fully speaks the legislative

will that no exceptions can be read into it.   Harris v. McGovern, 99 U. S. 161, 167, 25 L. Ed. 317; Dumphey v. Hilton, 121 Mich. 315, 80 N. W. 1; DeMoss v. Newton, 31 Ind. 219, 222; Smith v. Macon, 20 Ark. 17.   That the absence of an exception in favor of minors does not affect its validity is shown in Vance v. Vance, 108 U. S. 514, 521, 2 Sup. Ct. 854, 859, 27 L. Ed. 808, where it was said by Mr. Justice Miller, in delivering the opinion of the court:

"It is urged that because the plaintiff in error was a minor when this law went into operation it cannot affect her rights.   But the Constitution of the United States, to which appeal is made in this case, gives to minors no special rights beyond others, and it was within the legislative competency of the state of Louisiana to make exceptions in their favor or not.   The exemptions from the operation of statutes of limitation usually accorded to infants and married women do not rest upon any general doctrine of the law that they cannot be subjected to their action, but in every instance upon express language in those statutes giving them time after majority or after cessation of coverture to assert their rights."

The case of Morgan v. City of Des Moines, 8 C. C. A. 569, 60 Fed. 208, is also strongly in point.   An act of the Legislature of Iowa limited to six months the time for commencing actions against municipal corporations for injuries resulting from defective streets or sidewalks, unless written notice specifying the place and circumstances of the injury was served upon the corporation within 90 days after the injury.   The act contained no exception in favor of minors, and it was sought to import into it by construction a provision in the Code of Civil Procedure making such exception in respect of the general statute of limitations.   It was said by Judge Caldwell, in delivering the opinion of the court:

"The act of February 17, 1888, is not an amendment of any previous act on the subject to which it relates.   It is new and independent legislation, and complete in itself.   It establishes the rule for the class of cases to which it relates.   The power of the Legislature to enact the statute is not questioned.   It would be entirely competent for the Legislature to enact a general statute of limitations putting minors and adults on the same footing as to all causes of action, and such would be the legal effect of a statute which contained no saving clause exempting infants from its operation. This principle has never been questioned."

It must be held that the minor appellants are as much within the operation of the statute as are those who are adults.

The decree is affirmed.